**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAJOR GEORGE TILLERY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-16-0235** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **JOHN WETZEL, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

### I.    Introduction

Presently before the Court are two motions to dismiss the Complaint filed by Pennsylvania Department of Corrections (DOC) Defendants[1] and those employed by the contract medical care providers at SCI-Mahanoy and SCI-Frackville.[2] (ECF Nos. 12 and 21.)

For the reasons that follow, the DOC Defendants' motion will be granted in part and denied in part, while the medical Defendants' motion to dismiss will be granted.

---

[1] The Department of Corrections Defendants are: Secretary John Wetzel; SCI-Mahanoy Superintendent John Kerestes,; Dr. Paul Noel, Director fo the DOC Medical Services; SCI-Frackville Superintendent Brenda Tritt; SCI-Frackville Deputy Superintendent George Miller, Acting Superintendent's Assistant Jennifer Newberry; John Steinhart, Chief Health Care Administrator (CHCA) SCI-Mahanoy; Vickie Stanishefski, former CHCA SCI-Frackville; RN Karen Holly; Major Michael Damore; Lt. Clark; Ms. Griffin; Captain S. Downs; Sharon Luquis; Dorina Varner, Chief Grievance Officer, DOC Office of Inmate Grievances and Appeals; and Randall Sears, Deputy Counsel.

[2] The named medical care providers, Dr. John Lisiak and Dr. Haresh Pandya, are represented by separate counsel than the DOC Defendants.

## II. Background

Pro se Plaintiff, Major George Tillery, a sixty-seven year old African-American inmate presently housed at the Frackville State Correctional Institution (SCI-Frackville), in Frackville, Pennsylvania. Mr. Tillery is serving a life sentence without parole. He has been housed in various state and federal prisons over the past thirty years, including USP-Leavenworth, SCI-Camp Hill's Special Management Unit, and New Jersey's Management Control Unit.[3] (ECF No. 1, Compl.) He has served more than twenty years in solitary confinement. (*Id.*, ¶ 43.)

In March 2010, Mr. Tillery returned to the Pennsylvania DOC and was housed at SCI-Forest, a maximum security facility and placed on the Restricted Release List (RLL). (*Id.*, ¶ 33.) While there he participated in the RLL Step Down program. (*Id.*, ¶ 40.) Upon his successful completion of the program, and with Secretary Wetzel's approval, on April 30, 2014, Mr. Tillery was transferred to SCI-Mahanoy's Restricted Housing Unit (RHU) under administrative custody. (*Id.*, ¶ 40.) At the time of his transfer, Mr. Tillery had been misconduct free for eleven years. (*Id.*)

### A. Events at SCI-Mahanoy

On May 14, 2014, two weeks after his arrival at SCI-Mahanoy, he was released to general population and placed on cellblock DB. (*Id.*, ¶ 42.) John Kerestes was SCI-Mahanoy's Superintendent when Plaintiff arrived at the facility. Superintendent Kerestes previously served

---

[3] Mr. Tillery is an experienced litigator who served as the lead plaintiff in a class action challenging the conditions of confinement at SCI-Pittsburgh in the late eighties. *See Tillery v. Owens*, 719 F. Supp. 1256 (W.D. Pa. 1990), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

as the Deputy Superintendent at SCI-Frackville when Mr. Tillery was housed there in 2002 but eventually transferred out after he was accused of organizing inmates to attack officers. (*Id*., ¶ 41.)

### (1) Employment

In November 2014, at the suggestion of Major Damore, supervisor of all unit managers at SCI-Mahanoy, Mr. Tillery was selected to become a Peer Specialist. Peer Specialists, including Mr. Tillery, were paid to participate in a ten day training program at the DOC's Central Office. (*Id*., ¶ 47.) His job as a Peer Specialist required him to be on-call twenty four hours a day to assist prison staff with a problem with a prisoner or otherwise assisting other prisoners, particularly the elderly and mentally ill. In his role as Peer Specialist, Mr. Tillery met monthly with Maj. Damore and unit managers to discuss prisoner problems. (*Id*., ¶ 49.) He received approximately seventy dollars a month as compensation. (*Id*., ¶ 47.)

On February 25, 2015, Maj. Damore removed Mr. Tillery from his position as Peer Specialist in retaliation for his advocating for himself and other inmates. Maj. Damore also moved him from cellblock DB to cellblock CB on the other side of the prison. Maj. Damore told him the move was to give him a "new start." (Id., ¶¶ 61 - 62.) On March 5, 2015, Mr. Tillery filed Grievance 555752 (ECF No. 22-1, p. 12), asserting he was removed from his job in retaliation for "saying bad things about the prison," and advising Maj. Damore of "Ms. Griffin's racial views." (*Id*.) He claims he was removed by Maj. Damore who did not follow DC-ADM 816 when removing him from his position. (*Id*.) George Beaver, SCI-Mahanoy's Corrections

Employment Vocational Coordinator responded to the grievance on March 11, 2015. (*Id.*, p.

13.) He wrote that

> [o]n February 25, 2015 you attended a Support Team Hearing on your current housing unit C-B, which was conducted by Major Damore (Mjr. Unit Managment); for *being a disruptive influence to both inmates and staff* on your previous housing unit D-B. Per policy *DC-ADM 816, Inmate Compensation Manual; Section 1 - General Procedures; Subsection B, #6. No inmate has a right to be assigned or continue in any specific work assignment.* And a Support Team Hearing is the same as an informal disciplinary action. Your pay rate was reduced to 2d ($.29), and will be reinstated once you are placed in a block job. You were removed from your assignment as a Certified Peer Support through your own actions.

(*Id.*) (emphasis in original). On March 26, 2015, Superintendent Kerestes upheld Mr. Beaver's

denial of the grievance. (*Id.*, p. 16.) Mr. Tillery's initial appeal to the Secretary's Office of

Inmate Grievances & Appeals (SOIGA) was returned on April 17, 2015, without resolution due

to Plaintiff's failure to supply a signed and dated legible copy of his initial grievance. (*Id.*, p.

23.) On June 9, 2015, Keri Moore signed the SOIGA resolution of this grievance on Dorina

Varner's behalf. (*Id.*, p. 11.) SOIGA denied Mr. Tillery's appeal. (*Id.*)


### (2)    Mental Health & Medical Issues

As with most senior citizens, Mr. Tillery has numerous medical issues: hypertension;

poor circulation; degenerative arthritis in his leg and back; episodes of labored breathing and

chest pain; a failing liver with an intrahepatic stint; and untreated Hepatitis C. He has also had

his gall bladder removed. In the past he was provided an additional mattress, orthopedic

shoes, a back brace as well as medication for these ailments. (*Id.*, ¶ 34.)

-4-

As a condition of his release from the Step Down Program, and his entry into general population, Mr. Tillery was to receive mental health aftercare. Yet, his requests for the same were ignored by Ms. Griffin, his Unit Manager (UM), "who didn't want prisoners from RLL to be complaining about prison conditions." (*Id*. at ¶ 44.) On August 26, 2014, Mr. Tillery filed grievance 524682, to obtain weekly psychological sessions.[4]

In December 2014, Mr. Tillery developed a skin rash covering his lower extremities. At first he purchased hydrocortisone cream from the prison commissary to treat it. When the rash became worse, and he learned other inmates on the block had the same rash, he went to sick call. He was given another cream, triamcinolone, as treatment. (*Id*., ¶¶ 50 - 51.) On January 31, 2015, Mr. Tillery filed Grievance 549714, "object[ing] to the lack of diagnosis and improper treatment" of his ongoing skin rash. (*Id*., ¶ 52.) On February 24, 2015, Nurse Karen Holly denied Grievance 549714. She also disputed Mr. Tillery's assertion of a "rash epidemic" on the housing unit and asked for his proof of the same. CHCA Steinhart and Superintendent Kerestes upheld Nurse Kelly's "hostile" grievance response. (*Id*., ¶ 58.) On March 11, 2015, Mr. Tillery filed Grievance 556111 complaining of Dr. Lisiak and RN Holly's "deliberate indifference" to his continuing painful skin rash. (Id., ¶ 68.) It was denied as frivolous. (*Id*.)

---

[4] Plaintiff filed a similar grievance on December 6, 2015, while he was housed at SCI-Frackville. *See* ECF No. 22-1, Grievance 601408, pp. 31 - 32. In that grievance, Mr. Tillery claims he has a "Stability C" rating and that members of the psychology and medical department were colluding with Deputy Miller to deny him proper mental health treatment in retaliation for his filing of grievances. (*Id*., p. 32.) Mr. Tillery appealed this grievance to final review. *See* ECF No. 22-2, Moore Decl., ¶ 12.

### (3)    Mumia Abu-Jamal

Mr. Tillery noticed another inmate, Mumia Abu-Jamal, suffering from the same rash and not looking well.  He urged this inmate to seek medical assistance.  (*Id.*, ¶ 53.)  On or about February 18, 2015, in his role as a Peer Specialist, Plaintiff approached Superintendent Kerestes, and told him Mumia Abu-Jamal "looked as if he was going to die and needed to be taken to the hospital."  (Id., ¶ 54.)  Superintendent Kerestes told him to mind his own business and take care of himself.  (*Id.*)  He also shared his concern that older inmates were getting misconducts for sleeping through count and that there was an undiagnosed and untreated skin rash in the cellblock.  (Id., ¶ 55.)  Two days later Maj. Damore "berated" Mr. Tillery for having spoken Supt. Kerestes and said that "he should have just come to [him]."  (Id., ¶ 57.)

On March 30, 2015, Mr. Abu-Jamal was rushed to an outside hospital in diabetic shock. He returned to the facility on April 2, 2015.  (*Id.*, ¶ 69.)  "It became publicaly known that Tillery had advocated for Mumia Abu-Jamal and warned Kerestes that Abu-Jamal needed to go to the hospital."  (*Id.*, ¶ 73.)

### (4)    Lt. Clark's Searches of Mr. Tillery's Cell

On February 18, 2015, Lt. Clark conducted an "investigative" cell search of Plaintiff's cell.  His cell was left in shambles and some of his legal materials were removed.  A few day later "most of" his legal materials were returned.  Plaintiff filed grievance 554099 concerning this event.  (Id., ¶ 56.)  Lt. Clark searched Mr. Tillery's cell again on February 25, 2015 "by accident."  (Id., ¶ 59.)  Meanwhile, UM Griffin threatened Plaintiff "with [a] designation as a

'Muslim combatant' if he kept filing grievances." (Id., ¶ 60.) On March 10, 2015, Lt. Clark conducted another search of Plaintiff's cell, allegedly random, that left it in shambles. (*Id*., ¶ 63.) Mr. Tillery filed Grievance 556125 on March 12, 2015 alleging that while the DOC had the right to conduct cell searches, Lt. Clark's searches "were conducted to deprive him of legal materials and to harass him." (*Id*., ¶ 63 and 66.) Plaintiff also filed a "criminal complaint" against Lt. Clark "for theft of his personal property and submitted it to [Maj.] Damore." (*Id*., ¶ 64.) Lt. Clark then threatened to search Plaintiff's cell whenever he was on duty because Mr. Tillery had filed "state charges" against him. (*Id*., ¶ 65.) Mr. Tillery was told that the justification for the cell searches was that he was designated an "escape risk". (*Id*., ¶ 67.)

### (5) Transfer from SCI-Mahanoy to SCI-Frackville

On April 8, 2015, Mr. Tillery was transferred from SCI-Mahanoy to SCI-Frackville without advance notice. He was not permitted to pack his personal effects or legal papers. (*Id*., ¶ 74.) He had not received any misconducts while at SCI-Mahanoy. (*Id*., ¶ 75.) He was told SCI-Mahanoy initiated "an administrative swap." (*Id*., ¶ 76.) Captain Downs, SCI-Frackville's Intelligence Officer, initially objected to the transfer as Mr. Tillery's prior stay at SCI-Frackville "didn't work." (*Id*., ¶ 77.) Mr. Tillery's legal counsel was scheduled to meet with him, at SCI-Mahanoy, on April 9, 2015 and received no advance notice that he had been moved to SCI-Frackville. (*Id*., ¶ 78 - 81.)

On April 8, 2015, Mr. Tillery's legal counsel emailed "DOC Counsel" and Superintendent Kerestes that he was improperly classified as an escape risk and that his periodic cell searches

were not justified.  (*Id*., ¶ 80.)  On April 13, 2015, Plaintiff's legal counsel mailed a copy of the

letter to Superintendent Tritt.  (*Id*., ¶ 82.)  Counsel asserted that the cell searches and transfer

were in retaliation for client's filing of grievances, misclassification as an escape risk and for

his speaking out on behalf of Mr. Abu-Jamal.  (*Id*., ¶ 82.)

**B.    Events at SCI-Mahanoy**

**(1)    Improper Classification**

Mr. Tillery requested Superintendent Tritt to correct the erroneous information in his file

that labeled him an "escape risk".  Superintendent Tritt advised him that SCI-Frackville was a

"new slate" and that he would have to wait until March 2016 to conduct a security classification

review.    (*Id*., ¶ 84.)    Mr. Tillery filed Grievance 564228 on April 29, 2015 based on

Superintendent Tritt's refusal to conduct a review.

**(2)    False and Retaliatory Misconduct Charges**

On April 30, 2015, Mr. Tillery was charged with receiving a "letter with positive test

results for suboxone."  Capt. Downs issued Plaintiff misconduct B723372 charging Mr. Tillery

with two Class 1 misconducts: #22 Possession or use of a dangerous or controlled substance

and #40 Unauthorized Use of Mail or telephone.  (*Id*., ¶ 86.)  The substance was affixed to the

envelope and underneath the postage stamp.  ((*Id*., ¶ 87.)  After testing in the institution's

security office, Mr. Tillery was placed in administrative custody pending the outcome of his

misconduct hearing.  (*Id*., ¶¶ 87 - 88.)  No investigation was conducted to determine who the

letter was from, no independent testing of the material alleged to be a controlled substance was conducted. No attempt was made to show that Mr. Tillery solicited or had any knowledge of the suboxone being sent to him. (*Id.*, ¶ 89.) Prior to this incident, Mr. Tillery had never received a misconduct for drugs or dirty urine in 32 years. (*Id.*, ¶ 90.) HEX Luquis conducted Plaintiff's misconduct hearing on May 7, 2015. (*Id.*, ¶¶ 92 - 93.) She found him guilty of both charges and gave him 90 days in the RHU for each, totally 180 days, or until October 26, 2016. (*Id.*, ¶ 93.)

Mr. Tillery filed a Misconduct Hearing Appeal to the Program Review Committee (PRC) arguing the punishment was disproportionate to the offense and that there was insufficient evidence to support the decision. (*Id.*, ¶ 95.) Mr. Tillery denied any knowledge or involvement in the attempt to smuggle drugs into the institution via the mail. He claims he was "set up." (*Id.*, ¶ 96.) The PRC upheld HEX Luquis' determination. (*Id.*, ¶ 98.) On May 18, 2015, Plaintiff appealed the PRC's decision to Superintendent Tritt. (*Id.*, ¶ 99.)

On May 13, 2015, Mr. Tillery asked Superintendent Tritt to be criminally arrested for his alleged crime because there was insufficient evidence to support the misconduct findings and lack of legitimate testing of the alleged drug. (*Id.*, ¶ 97.) He also offered to take a lie detector test. (*Id.*) Superintendent Tritt declined his request noting the testing was quite clear and valid. (*Id.*)

Following the misconduct hearing, Mr. Tillery's attorney investigated the sender's address of tainted mail. (*Id.*, ¶ 104.) Mr. Abdul H. Jamal (*ne* Larry Francis) from Philadelphia admitted to sending Mr. Tillery the letter but denied including any drugs in it. (*Id.*, ¶¶ 105 -

106.)  He signed an affidavit to the same which was provided to Secretary Wetzel, DOC Legal Counsel Theron Perez, Superintendent Kerestes and Superintendent Tritt.  (*Id.*, ¶ 109.)  Mr. Tillery's legal counsel sought a full investigation of the retaliatory conduct against Mr. Tillery, including the misconduct.  (*Id.*)

On June 25, 2015, DOC Deputy Chief Counsel Randall N. Sears "rejected the Plaintiff's objections to the set-up retaliatory disciplinary charges." (*Id.*, ¶ 118 and ¶ 155.)

### (3)    Lt. Brian Taylor

On June 10, 2015, Lt. Brian Taylor, of the DOC's Office of Special Investigations (OSI), interviewed Mr. Tillery at the request of Secretary Wetzel.  (*Id.*, ¶ 112.)  Lt. Taylor conducted a full review of Mr. Tillery's history in the Pennsylvania DOC, his medical complaints, his retaliatory transfer from SCI-Mahanoy to SCI-Frackville, false separation and charges that are still kept in Plaintiff's file and are used to incorrectly classify him and his security designation as an "escape risk" and the retaliatory false misconduct he received. (*Id.*, ¶ 113 - 114.)  Lt. Taylor advised Plaintiff that the "prison officials have no proof that he committed the misconducts, but that [Mr.] Tilleyr had no proof it was a set up." (*Id.*, ¶ 116.)

### (4) RHU Conditions of Confinement

Mr. Tillery claims he was not provided with a change of underwear in the RHU from April 30, 2015 until May 20, 2015.  (*Id.*, ¶ 103.)  After his family insisted, he received his liver medication.  He did not receive his legal papers until May 20, 2015.  (*Id.*)  On June 12, 2015,

-10-

Mr. Tillery's request to call his attorney was denied by the PRC. (*Id.*, ¶ 117.) Additionally, he claims he was denied his medications, placed on food rations, denied commissary and contact visits, and allowed very limited outdoor exercise. (*Id.*, ¶ 128). While in the RHU, Mr. Tillery lost twenty pounds. (*Id.*, ¶ 139.)

On May 22, 2016, a corrections officer "put a dirty toilet brush in [Mr. Tillery's] food tray, to be used to clean his cell." (*Id.*, ¶ 129.) Plaintiff claims this to be "another act of harassment and retaliation." (*Id.*) On May 25, 2015, Mr. Tillery filed Grievance 567683 concerning this health hazard. (ECF No. 22-1, p. 25.) Ms. Newberry received the grievance on May 26, 2015. (*Id.*) Plaintiff was provided with an Initial Response to his grievance on June 9, 2015. (*Id.*, p. 26.) On June 11, 2015, Mr. Tillery filed an appeal to the Facility Manager. (*Id.*, p. 27.) Superintendent Tritt denied his appeal on June 12, 2015. (*Id.*, p. 28.) Plaintiff filed an appeal to SOIGA on June 25, 2015. (*Id.*, p. 29.) SOIGA dismissed his appeal at final review due to his failure to provide all the necessary paperwork required under the DOC's grievance policy for consideration. (*Id.*, p. 30.) Noting that this was not Mr. Tillery's first time in failing to provide all necessary documentation for review, he was not given the opportunity to submit a corrected appeal. (*Id.*)

On July 23, 2015, a 90-day review was conducted by the PRC. Mr. Tillery's request to cut his DC time in half was denied. (*Id.*, ¶ 120.) He was also denied a call to his attorney and his orthopedic boots. (*Id.*) On August 6, 2015, Mr. Tillery's request to Superintendent Tritt to reduce his disciplinary custody time was denied. (*Id.*, ¶ 121.) On August 27, 2015, the PRC voted to release Mr. Tillery to general population the week of August 31, 2015. (*Id.*, ¶ 122.)

On September 2, 2015, Superintendent Tritt released Mr. Tillery from DC status.  Mr. Tillery

was released to general population on September 7, 2015.  (*Id*.)

### (5)    Post-RHU Housing

Mr. Tillery was housed in the RHU Annex following his release from disciplinary custody.

(*Id*., ¶ 125.)  The bottom tier of that unit contains general population inmates while the upper

level houses RHU inmates.  (*Id*.)  The RHU population is "loud and distraught."  (*Id*.)

Ms. Smith, Mr. Tillery's psychologist who treats him for anxiety and depression,

recommended that he be placed on a "regular" general population cellblock.  This request was

denied by Capt. Downs and Deputy Miller for retaliatory purposes.  (*Id*., ¶ 126.)

### (6)    Retaliatory Medical Neglect and Mistreatment

When Mr. Tillery was transferred to SCI-Frackville on April 8, 2015, he was denied his

extra mattress, orthopedic shoes and back brace (*id*., ¶ 127), items that he has had at previous

institutions for over ten years.  His potassium supplements were also not refilled.  (*Id*., ¶ 127.)

On May 9, 2015, Plaintiff filed Grievance 566793 concerning this denial.  CHCA Stanishefski

and Grievance Coordinator Newberry denied the grievance without legitimate medical reasons.

(*Id*., ¶ 128.)  He filed Grievance 569706 on May 28, 2015 after Dr. Haresh Pandya refused to

grant his request for an additional mattress and brace to address his back pain.  (*Id*., ¶ 120.)

CHCA Stanishefski and Grievance Officer Newberry denied his grievance.  (*Id*.)

On May 29, 2015, Mr. Tillery "was given a medical work-up including radiology of his spine, hips and feet." (*Id.*, ¶ 131.) Additionally, on June 10, 2015, he received his backbrace. (*Id.*)

Still without relief from his painful skin rash, which had developed into open oozing sores, Mr. Tilllery filed Grievance 571661 in June 2015 and Grievance 574084, asserting a claim of deliberate indifference to his medical needs because the institution "refused to prescribe an ointment that was helping because it 'cost too much.'" (*Id.*, ¶ 132.) The first grievance was denied by Ms. Newberry, and the second by CHCA Stanishefsky. (*Id.*, ¶ 133.) On August 6, 2015, Secretary Tritt denied Plaintiff's appeal of Grievance 574084. (*Id.*, ¶ 135.)

On July 29, 2015, Mr. Tillery submitted a special request to Dr. Pandya for treatment followed by Grievance 580695 citing violations of the Americans with Disabilities Act and the Eighth Amendment. (*Id.*, ¶ 134.) A surgical skin biopsy was done on Mr. Tillery's left shin dated August 20, 2015 revealed "a rare fungal organism" that is otherwise not diagnosed. (*Id.*, ¶ 136.) On August 27, 2015, CHCA Stanishefski denied Grievance 580695. (*Id.*, ¶ 137.) Mr. Tillery still suffers from the skin rash. (*Id.*, ¶ 138.)

On October 26, 2015, after days of ignoring Plaintiff's complaints of a bowel obstruction, he was taken to the Wyoming Vallley Medical Center for treatment. Mr. Tillery knew the symptoms of a bowel obstruction since he had this three times before. (*Id.*, ¶ 140.) Mr. Tillery's daughter's request to learn more about his condition or to speak with him directly were denied by Superintendent Tritt. (*Id.*, ¶ 141.) His daughter made repeated calls to the nurse at SCI-Frackville to receive medical updates on her father. When she was able to reach the

nurse she was only given "partial" reports. (*Id.*, ¶ 142.) Five days after his admission, Mr. Tillery was discharged from the hospital. (*Id.*, ¶ 143.) Initially he was taken to a different facility and held in their RHU. He was transferred back to SCI-Frackville on November 2, 2015 without receiving a post-hospitalization diet or any follow-up medical treatment. (*Id.*, ¶ 145.) Although nauseated and in pain, Mr. Tillery did not see any medical personnel until November 4, 2015. (*Id.*, ¶ 146.)

Mr. Tillery claims that as a chronic clinic patient he is entitled to medication and testing without cost. He should receive proper treatment and not be forced to pay for medication that should be provided to him. He claims requiring him to pay for his treatment and medication is another form of retaliation for his exercise of his First Amendment rights. (*Id.*, ¶ 146.)

**(5)  Interference with Mr. Tillery's Access-to-Courts**

In September 2014, when Mr. Tillery was released to SCI-Mahanoy's general population, he resumed his efforts, with the assistance of counsel, to overturn his conviction. (*Id.*, ¶ 147.) Lt. Clark hampered this process by refusing to "immediately process" Mr. Tillery's request to put his legal counsel on his legal visitors list. (*Id.*)

While at SCI-Frackville he was denied attorney telephone calls while in the RHU. (*Id.*, ¶ 149.) He was also denied a confidential visit with his attorney on May 12, 2015 in the Administrative Custody visiting room. Additionally, his May 22, 2015 and July 31, 2015, attorney visits were limited to one hour even though his attorney, who was traveling from NYC, requested two hour visits. (*Id.*) Finally, he claims his counsel was initially denied permission

to bring a legal pad and pen to his November 3, 2015, legal visit after he returned from his emergency hospitalization following his bowel obstruction. (*Id.*) He claims these acts were "carried out under the authority of [Superintendent] Tritt and [Deputy] Miller." (*Id.*, ¶ 150.)

Plaintiff filed Grievance 580308 concerning the time restrictions placed on his May and July 2015 attorney visits. Lt. Reichart denied the grievance on August 8, 2015. (*Id.*, ¶ 151.) His appeal to Superintendent Tritt was denied on August 13, 2015. (*Id.*, ¶¶ 152 - 153.) However, she reversed the denial of allowing counsel to bring a notepad and pen to the November 3, 2015, meeting. (*Id.*, ¶ 154.)

Mr. Tillery claims to have "exhausted his administrative remedies by filing grievances through the appeal process as set forth by DOC Regulations. Additionally, Tillery is in substantial compliance in that all issues existing prior to June 10, 2015 and are raised in this complaint were discussed directly with a representative of the DOC Office of Special Investigation, Lt. Taylor on June 10, 2015, and no remediable action was taken by the DOC." (*Id.*, ¶ 155.)

### C.    The DOC's Administrative Remedy / Grievance Process

The Pennsylvania DOC has a three step grievance appeal process. DC-ADM 804 was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration. (ECF No. 22-2, Moore Aff., ¶ 4; *see also* http://www.cor.state.pa.gov.) Pursuant to DC-ADM 804, the Inmate Grievance System, inmates must first file the grievance with the Facility Grievance Coordinator at the facility where the events upon which the

-15-

complaint is based.  If the inmate is unsatisfied with the initial review of his or her grievance, he or she may file an appeal of the decision with the Facility Manager (Superintendent).  Upon receiving a decision from the Superintendent, the inmate may appeal that decision to final review by SOIGA.  (*Id.*, ¶¶ 5 - 7.)

Via the DOC's Inmate Handbook, inmates are provided with notice of the Grievance Policy and the requirements they must meet in grieving their issues through the Grievance Policy.  (*Id.*, ¶ 8.)  Pursuant to § VI(D)(1)(g) of DC-ADM 804,

> An inmate appealing a grievance to final review is responsible for providing the Secretary's Office of Inmate Grievances and Appeals with all required documentation relevant to the appeal.  A proper appeal to final review shall includ photocopies of the initial grievance, initial review response, the inmate appeal to the Facility Manager, and the Facility Manager's decision.  Failure to provide the proper documentation may result in the appeal being dismissed.

(*Id.*, ¶ 9.)  Since 2002, Mr. Tillery has only submitted four grievances to SOIGA for final review: Grievance Nos. 510467, 601408, 555752, and 567683.  (*Id.*, ¶ 12.)


### III.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will

ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must " 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 - 50, 173 L.Ed.2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1973, meaning enough factual allegations " 'to raise a reasonable expectation that discovery will reveal evidence of' " each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a `probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, 679, 129 S.Ct. at 1950.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's " 'bald assertions' " or " 'legal conclusions,' " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

## IV.	Discussion

### A.	Mr. Tillery's Exhaustion of available Administrative Remedies

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, ____ U.S. ____ , ____, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).   The PLRA's exhaustion requirement applies to retaliation claims.  *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003)(citing Porter, 534 U.S. at 532, 122 S.Ct. at 992).

Inmates, however, need only exhaust those administrative remedies which are "available" to him.  *See Robinson v. Supt. SCI Rockview*, 831 F.3d 148, 153 (3d Cir. 2016) (quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002) ("[W]e note that the PLRA requires exhaustion of 'available' administrative remedies and defined such as those that are 'capable of use; at hand.' ").

Exhaustion is mandatory and must be "proper," which requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so *properly* (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 , 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006)(emphasis in original).  This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including

deadlines, as a precondition to bringing suit in federal court." (*Id*.) The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. (*Id*.) Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004); *Small v. Camden Cty*, 728 F.3d 265, 272 (3d Cir. 2013) (completion of the administrative review process "means 'substantial' compliance with the prison's grievance procedures"). Further, the Supreme Court has held that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007). Inmates complaining about prison conditions must exhaust prison grievance remedies before initiating a lawsuit. *See Jones*, 549 U.S. at 204, 127 S.Ct. at 914; *see also Strickengloss v. State Corr. Inst. at Mercer*, 531 F. App'x 193, 194 (3d Cir. 2013) (nonprecedential) (inmates required to exhaust administrative remedies prior to filing suit); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (nonprecedential) (noting "unanimous circuit court consensus" that prisoner cannot fulfill the exhaustion requirement after filing the complaint). As such, dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action. *Nifas v. Beard*, 274 Fed.Appx. 241, 245 (3d Cir. 2010) (nonprecedential)(affirming grant of summary judgment that dismissed claims without prejudice where administrative remedies were not exhausted prior to commencement of action).

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id*.) As such, it must be plead and proven by the Defendants. *Brown,* 312 F.3d at 111.

As exhaustion is a precondition for bringing suit and, as such, it is a ""threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time."" *Small v. Camden Cnty.*, 728 F.3d 265, 269 - 270 (3d Cir. 2013) (emphasis in original) (citations omitted). Accordingly, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 271.

Mr. Tillery cloaks each of his seven causes of action in terms of a retaliation claim. *See* ECF No. 1, pp. 40 - 48. He claims that each of the actions taken by the DOC Defendants and Medical Defendants was motivated in retaliation for grievances he filed or advocacy he engaged in on behalf of other inmates. While Mr. Tillery states he has exhausted all of his available administrative remedies, and even identifies the grievances he has filed relating to his claims, the Medical Defendants argue that he has only presented four grievances to SOIGA for final review and that none of them pertain to retaliation by either Dr. Lisiak or Dr. Pandya.[5] (ECF No. 21, Medical Defs'. Mot. to Dismiss.) The Court agrees.

In support of their motion to dismiss, the Medical Defendants provide the affidavit of Ms. Keri Moore, the Assistant Chief of SOIGA who affirms that since 2002, Mr. Tillery has only

---

[5] Mr. Tillery did not file a brief in opposition to the Medical Defendants' motion to dismiss.

presented four grievances to SOIGA:  Grievance Nos. 510467, 601408, 555752 and 567683. (ECF No. 22-2, Moore Aff. at ¶12.)  The Court will review each grievance in turn.

Mr. Tillery filed Grievance No. 510467 on May 21, 2014 while housed at SCI-Mahanoy. (ECF No. 22-1, pp. 1 - 10.)  In the grievance he asserts that the medical department is being negligent and exhibiting deliberate indifference to his chronic back pain by not providing him with a second mattress and back brace, items that he received at previous prisons.  (*Id*., p. 3.) Nurse Holly denied the grievance.  (*Id*., p. 4.)  Superintendent Kerestes upheld Nurse Holly's initial response to the grievance.  (*Id*., p. 6.)  Dorina Varner, first referred the matter to the Bureau of Health Care Services for review and then, on September 10, 2014, denied Plaintiff's appeal to SOIGA.  (*Id*., pp. 1 - 2.)  In addition to failing to name either of the Medical Defendants as responsible for denying the issuance of an extra mattress, Plaintiff fails to allege that the mattress was denied for retaliatory purposes.  Thus, the Court holds that while Mr. Tillery successfully exhausted his administrative remedies as to his claim that he was denied a medically necessary mattress, he failed to properly exhaust his claim that any named defendant at SCI-Mahanoy withheld the extra mattress for retaliatory reasons.

Next, the Court examines Mr. Tillery's administrative exhaustion of Grievance No. 555752.  (*Id*., pp. 10 - 23.)   This grievance was filed on March 15, 2015, while Plaintiff was housed at SCI-Mahanoy.  (*Id*., p. 12.)  In the grievance Plaintiff asserts Maj. Damore removed him from his job as a Peer Specialist without Due Process in retaliation for "saying bad things about the prison" and after he reported "Ms. Griffin's racial views" to him.  (*Id*.)  George Weaver provided the initial response to the grievance and denied it.  (*Id*., p. 13.)  Superintendent

Kerestes upheld the initial response. (*Id*., p. 16.) Dorina Varner denied Plaintiff's appeal to SOIGA. (*Id*., p. 11.) Mr. Tillery properly exhausted his retaliation claim raised in Grievance No. 555752, thus he is permitted to pursue that claim in this action.

The third grievance, Grievance No. 567683 was filed on May 29, 2015, when Mr. Tillery was housed in SCI-Frackville's RHU. (*Id*., pp. 24 - 29.) Plaintiff alleges that CO Warren's practice of passing a toilet brush through the slot/wicket on his RHU door, where his food tray is also passed, is unsanitary and placed his health at risk. (*Id*., p 25.) Ms. Newberry receipted the grievance on May 26, 2015. It was referred to another prison official who denied the grievance. (*Id*., p. 26.) Superintendent Tritt denied the grievance appeal on June 12, 2015. Mr. Tillery's appeal to SOIGA was denied on August 13, 2015 by Dorina Varner. (*Id*., p. 24.) Thus, the issues presented in Grievance No. 567683 are properly exhausted. However, Mr. Tillery did not raise a claim of retaliation in this grievance, he grieved the RHU procedure for distributing toilet brushes as unsanitary, not retaliatory.

The fourth grievance Mr. Tillery pursued to final review, Grievance No. 601408, concerns Mr. Tillery's "Stability C" rating and Ms. Smith's collusion with Deputy Miller to deny him weekly psychology visits which he claims were required following his release from the RLL. He also asserts Deputy Miller housed him in the general population area of the RHU annex in retaliation for his filing of grievances. (*Id*., pp. 31 - 32.) Ms. Newberry receipted the grievance. (*Id*.) Deputy Meintel denied it upon initial review. (*Id*., p. 33.) Superintendent Tritt denied the appeal on December 29, 2015. (*Id*., p. 34.) However, because Mr. Tillery failed to provide SOIGA with all of the required documentation for final review, the appeal was dismissed

without consideration of the merits. (*Id*., p. 30.) Thus, Plaintiff failed to properly exhaust all his available administrative remedies with respect to Grievance No. 601408. Accordingly, all claims that could have derived from this grievance are dismissed as procedurally defaulted.

In sum, the DOC's administrative remedy process was available to Mr. Tillery to properly challenge his conditions of confinement, including retaliation, claims. Mr. Tillery does not assert that prison officials thwarted his exhaustion efforts in any manner. As asserted in the Complaint, Mr. Tillery commenced grievances on many of the issues he complained of, yet only pursued four of them to final review as required by the DOC's grievance policy. Of the four, only three of them were properly presented to SOIGA for consideration. Moreover, of the three properly exhausted grievances, only one of them[6] includes a claim of retaliation, Grievance No. 555752, concerning the loss of his job. (ECF No. 22-1, pp. 12 - 23.) As such, all unexhausted claims must be dismissed without leave to amend as Mr. Tillery cannot now remedy this oversight.

**B.      Mr. Tillery's Remaining Retaliation Claims**

Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. *Bistrain v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). It is well settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless

---

[6]  The Court notes that this does not resolve Mr. Tillery's claim that he was issued a retaliatory misconduct because the DOC has a separate administrative remedy process for challenging misconduct hearing appeals. The DOC Defendants have not sought dismissal of this claim.

be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)).

To prevail on a retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered, at the hands of a state actor, an adverse action; and (3) his constitutionally protected conduct was a substantial or motivating factor in the state actor's decision to discipline him. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (internal citations omitted).

The filing of grievances or a lawsuit satisfies the constitutionally protected conduct prong of a retaliation claim. *Mearing v. Vidonish*, 450 Fed.Appx. 100, 102 (3d Cir. 2011) (per curiam) (citing *Millhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("Mitchell's allegation that he was falsely charged with a misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment.") Similarly, "oral complaints to prison personnel have been held to constitute protected activity." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (citing *Pearson v. Welborn*, 471 F.3d 732, 740 - 41 (7th Cir. 2006)).

Here two possible claims of retaliation remain: (1) Maj. Damore removed Plaintiff from his prison job in retaliation for statement he made concerning Ms. Griffins and the prison; and (2) his receipt of a retaliatory misconduct by Capt. Downs following the institution's interception of a drug laced letter addressed to Plaintiff. At this early stage of the case, the Court finds Mr.

Tillery has properly asserted both retaliation claims. The question now remains as to whom these claims rest.

Maj. Damore is alleged to have removed Mr. Tillery from his job. George Beaver (non-defendant) investigated Plaintiff's grievance and denied it. (ECF No. 22-1, p. 13.) As to Defendants Superintendent Kerestes and Dorina Varner, Mr. Tillery has failed to allege that their involvement in this matter exetended beyond their denial of his grievance and subsequent appeal. An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). The denial of a grievance or concurrence in an administrative appeals process is not sufficient to state a claim. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.") For this reason, the Court grants the motion to dismiss Mr. Tillerys claims against Superintendent Kerestes and Dorina Varner with prejudice.

As to Mr. Tillery's claim concerning his receipt of a false and retaliatory misconduct, the Court will allow this claim to proceed against Capt. Downs (who issued him the misconduct) and the HEX Luquis.

V.     **Conclusion**

DOC Defendants Wetzel, Kerestes, Tritt, Miller, Newberry, Steinhart, Holly, Stanishefski, Clark, Griffin, Varner and Sears will be dismissed from the action due to Mr. Tillery's failure to

exhaust his claims against them. Similarly, Drs. Lisiak and Pandya will be dismissed as Plaintiff has failed to exhaust his claim that they delayed or denied him medical care for retaliatory reasons. This action will proceed on the following retaliation claims: (1) Maj. Damore removed Mr. Tillery from his job; and (2) Capt. Downs and HEX Luquis issuance of a false and retaliatory misconduct related to Plaintiff's receipt of a letter containing suboxone.

     An appropriate order follows.

                                         **/s/ A. Richard Caputo**
                                         **A. RICHARD CAPUTO**
                                       **United States District Judge**

**DATE: August 22, 2017**